```
             UNITED STATES DISTRICT COURT
                DISTRICT OF NEW JERSEY
```

```
JORGE GARCIA, et al.,              HONORABLE JOSEPH E. IRENAS

        Plaintiffs,                CIVIL ACTION NO. 09-2668
                                           (JEI/KMW)
   v.

FREEDOM MORTGAGE CORPORATION.              OPINION

        Defendant.
```

**APPEARANCES:**

WOODLEY & MCGILLIVARY
By: Gregory K. McGillivary, Douglas L. Steel and Diana J. Nobile
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
    and
PITTA & GIBLIN, LLP
By: Vincent M. Giblin
120 Broadway
28th Floor
New York, NY 10271
        Counsel for Plaintiffs

MANDELBAUM, SALSBURG, LAZRIS & DISCENZA, P.C.
By: William H. Healey and Phillip G. Ray
155 Prospect Avenue
West Orange, NJ 07052
        Counsel for Defendant


**IRENAS**, Senior District Judge:

     This matter comes before the Court on Defendant's Motion to Decertify the FLSA Collective Action, Plaintiffs' Motion for Partial Summary Judgment and Defendant's Motion for Partial Summary Judgment and.  For the reasons set forth below, all of

the motions will be denied.[1]

## I.

Plaintiffs are loan officers and loan processors that were employed by Defendant Freedom Mortgage Corporation. (Memorandum in Support of Plaintiffs' Motion For Class Certification ¶ 2) Defendant Freedom Mortgage Company is a lender licensed as a mortgage broker in all 50 states with more than 100 locations throughout the United States. (*Id.* at 4) Defendant's headquarters is located in Mount Laurel, New Jersey. (*Id.*) Plaintiffs claim that Defendant denied them proper overtime compensation. (*Id.*)

In order to generate business for its loan products, Defendant would purchase lists of potential customers. (*Id.* at 5). Defendant used an automated dialing system to dial these potential customers. (*Id.*) When a potential customer answered the phone, he or she would be automatically connected to a loan officer.[2] (*Id.*) The loan officer would gather basic information about the potential customer, as well as access the potential customer's credit report. (*Id.* at 6) All of this information would be entered into Defendant's computer system, which would then indicate to the loan officer the potential

---

[1] The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, 28 U.S.C. § 1337 and 28 U.S.C. § 1367(a).

[2] Loan officers employed at Defendant's branch offices were responsible for procuring their own potential customers.

customer's eligibility for different loan products.  (*Id.*)  The loan officer would then advise the potential customer of the loan products for which they are eligible, as well as the available interest rates.  (*Id.*)  If the potential customer was interested in moving forward on a loan application following discussions with the loan officer, the potential customer would be passed along to a loan processor.  (*Id.*)  Loan officers were all compensated with a commission or bonus based on the number of closed loans for which they were responsible.  (*Id.*)  Those loan officers employed in headquarters also received a salary, while those employed in branch offices were solely compensated through commission.

   The loan processor would collect information related to the potential customer's compensation and tax history.  (*Id.*) The loan processor would then organize the potential customer's application and pass it along to the underwriter, who determined whether the potential customer would receive a loan.  (*Id.* at 7) If the underwriter needed any more information in coming to his or her decision, the loan processor would be responsible for gathering that information.  (*Id.*)  Once a loan was approved, the loan processor was also responsible for scheduling the closing and arranging the appraisal and title work.  (*Id.*)  Loan processors were all compensated with a salary and a bonus based on the number of closed loans for which they were responsible.  (*Id.*)

Plaintiffs each assert that they regularly worked in excess of 40 hours per week without receiving overtime compensation. (*Id.*)

Plaintiffs filed their original Complaint on January 29, 2009, in the United States District Court for the Central District of California against Defendant.[3] The Complaint has since been amended on numerous occasions.

Count One of the Fourth Amended Complaint asserts a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., for failure to properly pay overtime compensation to all the plaintiffs. Count Two asserts a class action under the New Jersey Wage and Hour Laws ("NJWHL"), N.J.S.A. § 34:11-56a et seq, for failure to properly pay overtime compensation to the New Jersey Plaintiffs. Count Three, Four and Five, brought by those Plaintiffs that were employed by Defendant in California, assert claims under the California Labor Code, California Unfair Practices Act and California Unfair Competition Laws, respectively.

The Court conditionally certified for the purposes of collective action under FLSA a class of employees of Defendant who served as loan officers and loan processors at any time from

---

[3] Upon joint stipulation, this case was transferred to the District of New Jersey on May 29th, 2009. On September 18, 2009, the Court consolidated this case with an almost identical complaint, *Perry v. Freedom Mortgage Corp.*, No. 09-0856, and designated the *Garcia* Plaintiffs the named lead Plaintiffs in the case.

January 28, 2006 to November 2, 2009.  The Court approved notice for the potential class, ordered that such notice be mailed to potential class members, set the opt-in period for the class at 120 days, and ordered Defendant to provide contact information for all past and present loan officers and loan processors.

Of the 230 individuals that Plaintiffs sought to certify as a subclass of loan officers, 100 such loan officers filed opt-in consents for the FLSA action.  (Declaration of Phillip G. Ray ¶ 20) Of the 119 individuals that Plaintiffs sought to certify as a subclass of loan processors, 20 such loan processors filed opt-in consents for the FLSA action.  (*Id.* at 21)

On February 10, 2011, Defendant moved to decertify the FLSA collective action.  On that same day, Plaintiffs and Defendant both moved for partial summary judgment on the loan officers' claims under the FLSA and NJWHL.[4]

## II.

### A.

Under 29 U.S.C. § 216(b), an employee who feels his or her right to unpaid overtime compensation has been violated may bring an action "for and in behalf of himself or themselves and other employees similarly situated."

---

[4] On December 22, 2010, Plaintiffs moved to certify a class action under Rule 23 of all current and former loan officers and loan processors who worked at Defendant's Mount Laurel, New Jersey headquarters location who failed to receive proper overtime compensation in violation of the NJWHL.  As set forth in an opinion issued by this Court on even date herewith, that motion will be denied.

The term "similarly situated" is not defined in the FLSA. In "the absence of guidance from the Supreme Court and Third Circuit, district courts have developed a test consisting of two stages of analysis" to determine if employees are similarly situated. *Kronick v. Bebe Stores, Inc.*, 2008 WL 4546368 at *1 (D.N.J. 2008).

The first analysis occurs when plaintiffs move for conditional certification of the potential class.  This first analysis is also called a stage one determination.  During stage one the court determines if notice should be given to potential class members. *Morisky v. Public Service Electric and Gas Co.*, 111 F.Supp.2d 493, 497 (D.N.J. 2000)(quoting *Thiessen v. General Electric*, 996 F.Supp. 1071, 1080 (D.Kan. 1998)).  Should conditional certification be awarded during stage one, then notice will be sent out to the potential class of plaintiffs.

It is possible for a class to be certified at stage one but fail certification at stage two.  Granting a conditional certification in stage one is not a final or permanent decision.  Once discovery is largely complete and the case is ready for trial, the case is in stage two.  If the defendant moves to decertify the class, a second, final determination on class certification will be made during stage two.  The burden of proof that must be met by the plaintiff is higher during stage two because the court "has much more information on which to base its decision." *Thiessen*, 996 F.Supp. at 1080; *See also Herring v.*

*Hewitt Assoc., Inc.*, 2007 WL 2121693 (D.N.J. 2007).  During this final determination, the court decides whether the plaintiff has shown that he or she is "similarly situated" to the potential class.  If the court determines during the stage two determination that the class of plaintiffs are "similarly situated," then the case may proceed to trial as a collective action.  *Morisky*, 111 F.Supp.2d at 497.  Should the court determine, however, that the plaintiffs are not "similarly situated," then the class will be decertified or split into subclasses.

**B.**

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v.*

*Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

### A.

Defendant has moved for decertification of the FLSA collective action, or, in the alternative, decertification of the loan officer subclass.  Defendant first argues that a collective action "would not be fair" because the Plaintiffs are not similarly situated.  Next, Defendant argues that the entire collective action should be decertified because damages would be too difficult to calculate.  Finally, Defendant argues that the loan officer subclass should be decertified because there is a disparity in job duties amongst the loan officers.  The Court disagrees with each of these arguments, and will not grant Defendant's motion for decertification.

First, Defendant argues that Plaintiffs are not similarly situated.  The Court finds, based on all the evidence before it, that the Plaintiffs have presented adequate evidence to show that the class members are similarly situated.  All Plaintiffs within each subclass had similar job duties, responsibilities and compensation structures.  All Plaintiffs within each subclass were subject to the same policy and practice of Defendant to

treat such Plaintiffs as employees exempt from the overtime requirements of the FLSA.  All Plaintiffs within each subclass assert common claims of failure to properly pay overtime compensation in violation of the FLSA.  Although differences between the Plaintiffs in each subclass may exist, any such differences are outweighed by the similarities between those Plaintiffs.  Because the Court finds that the Plaintiffs are similarly situated, the Court will deny Defendant's motion to decertify the FLSA collective action.[5]

Defendant next makes a conclusory argument that because damages will be "nearly impossible" to calculate, decertification is necessary.  Defendant has not presented any legal basis for this argument.  In fact, it is an employer's obligation to maintain proper employee records.  *See* 29 C.F.R. 516.2.  If an employer is found to have violated the FLSA and damages cannot be calculated because of the unavailability of employee records, damages can be reasonably inferred from the evidence before the Court.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 (1946).  Therefore difficulty in calculating damages alone is not sufficient to warrant decertification.

---

[5] For these same reasons, the Court will deny Defendant's motion to decertify the loan officer subclass.  While the loan officers employed in branch offices may have been responsible for procuring their own leads, their responsibilities and duties were the same as loan officers employed at headquarters in all other respects.  Importantly, all loan officers were subject to the same overtime policies and practices of Defendant.

**B.**

Plaintiffs and Defendant have also each moved for partial summary judgment. Defendant asserts that the loan officers qualify for the administrative exemption to the FLSA and therefore are not entitled to overtime compensation. Plaintiffs, in turn, assert that the loan officers are not so entitled, and that it is clear from the evidence that Defendant failed to properly pay the loan officers overtime compensation. Because there is are disputes of material fact on these issues, the Court will deny both motions.

Under Section 7(a) of the FLSA, employees are generally required to be paid overtime for all hours worked in excess of 40 hours per work. Congress has empowered the Secretary of Labor to define certain exemptions from the FLSA's overtime requirements by regulation, including an exemption for administrative employees. 29 U.S.C. § 213(a). In regulations issued pursuant to § 213(a), the Secretary of Labor has defined an "administrative employee" as one that is

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week. . . (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) Whose primary duty includes the

>            exercise of discretion and independent
>            judgment with respect to matters of
>            significance.

29 C.F.R. § 541.200.[6]

Defendants argue that loan officers should be exempt as administrative employees because there work was directly related to the general business operations of Defendant and involved discretion and independent judgment. Plaintiffs argue that the loan officers were essentially internal sales people, whose work was not a part of the general business operations and did not involve discretion or independent judgment. Exemptions under the FLSA are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 4 L. Ed. 2d 393, 80 S. Ct. 453 (1960).

For the purposes of the present motions, the Court must construe the facts and inferences in the light most favorable to the opposing party in considering whether the loan officers are exempt from the FLSA. Plaintiffs have presented evidence from which a reasonable factfinder could determine that the loan officers were not exempt from the FLSA, and Defendant has presented evidence from which a reasonable factfinder could determine that the loan officers were exempt. It is clear that

---

[6] There is no dispute that the loan officers received compensation greater than $455 per week.

there is a material dispute of fact concerning the application of the administrative exemption to the loan officers.  Summary judgment is inappropriate when such disputes of material fact exist.  Both parties' motions for partial summary judgment will be denied.[7]

## IV.

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment, Defendant's Motion for Partial Summary Judgment and Defendant's Motion to Decertify the FLSA Collective Action will be denied.[8]  An appropriate Order accompanies this Opinion.


Dated: June 10, 2011

                                              s/ Joseph E. Irenas
                                        **JOSEPH E. IRENAS, S.U.S.D.J.**

---

[7] The parties also moved for summary judgment as to the NJWHL.  Like the FLSA, The NJWHL includes an administrative exemption to its overtime compensation requirements.  N.J.A.C. 12:56-7.2.  The NJWHL is patterned after the FLSA, and New Jersey courts look to the FLSA regulations for guidance.  *See Marx v. Friendly Ice Cream Corp.*, 380 N.J. Super 302, 309 (App.Div. 2005).  Therefore eligibility for the administrative exemption under the FLSA would also be a determination of eligibility for the administrative exemption under the NJWHL, and the parties motions for summary judgment on this issue will be denied.  Because the Court denied the Plaintiffs motion to certify a class under the NJWHL, this holding only applies to the named Plaintiffs.

[8] Plaintiffs have moved for an award of liquidated damages and a judgment that Plaintiffs are entitled to a three-year statute of limitations.  Defendant has also moved for summary judgment on liquidated damages and the statute of limitations.  These are fact-specific inquiries best left to trial when all the evidence will be available.  For that reason, Plaintiffs' and Defendant's additional motions will be denied.